UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | | |
|---|---|---|
| ROBERT L. HENGEL *as Independent Administrator/Personal Representative of The Estate of Sean L. Hengel;* ROBERT L. HENGEL and LAURA HENGEL, | ) ) ) ) | |
| Plaintiffs | ) ) | CIVIL ACTION NO. 5:11-286 |
| v. | ) ) | **OPINION AND ORDER** |
| BUFFALO WILD WINGS, INC., et al., Defendants | ) ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the related motions for summary judgment filed by Defendants Bluegrass Tavern, LLC (DE 83) and Irish Holdings, LLC (DE 88). Robert L. Hengel, individually and as the independent administrator/personal representative of the estate of Sean L. Hengel, and Laura Hengel (collectively, "Plaintiffs") responded to these motions with one brief. (DE 95). The Court also will address the two motions at the same time.[1] These motions and the responses were filed under seal pursuant to the Court's Stipulation and Order. (DE 77). For the reasons stated below, the motions will be denied.

**I. Facts**

This case arises from a fatal collision between a train and a motor vehicle in the early hours of October 10, 2010. After drinking at establishments owned by Defendants, Sean Hengel drove his black Volkswagen Jetta onto the train tracks, just north of the railroad crossing on Spurr Road in Lexington, Kentucky. (DE 92-2, Final Investigative Report of Police Officer

---

[1] Bluegrass Tavern, LLC and Irish Holdings, LLC also have filed two other pairs of summary judgment motions on different grounds, and the Court will address those separately.

Bella Wells at 3). Around 2:00 a.m., a northbound train struck the car, the car burst into flames, and the train and the car traveled nearly half a mile down the tracks before stopping. (*Id.*). Sean Hengel did not receive any medical treatment before his death, and his remains were transported from his vehicle to the Office of the Medical Examiner in Frankfort, Kentucky, for identification. (*Id*. at 6).

Plaintiffs, Sean Hengel's parents, have brought this suit against the establishments that served him alcohol in the hours before the accident. Plaintiffs and Defendant Buffalo Wild Wings, Inc. Blazin Wings, Inc., d/b/a Buffalo Wild Wings Grill and Bar, the first establishment Sean Hengel visited that night, have settled the case between them pursuant to a confidential release ("release"). (DE 64, 77). It is this release that has prompted the current motions for summary judgment.[2] Defendants each argue that the release precludes, as a matter of law, any claim against them. There is no dispute as to the terms of the release, only as to how it may impact Bluegrass Tavern and Irish Holdings.

## II. Summary Judgment Standard

"Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Mazur v. Young*, 507 F.3d 1013, 1016 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); Fed. R. Civ. P. 56. "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir. 1989).

---

[2] Magistrate Judge Robert E. Wier explained that, under the terms of the protective order (DE 77), the pleadings related to the release have been sealed, but "that sealing a document that is part of the Court's decisional basis normally calls for a particularized showing (and finding) as to the propriety of sealing." (DE 90). As Judge Wier noted, the protective order's intent was to provide access to the release and "to assure that the agreement would be filed under seal in any motion practice regarding the need for further disclosure of the document." (*Id.*) While the Court may unseal the related pleadings (DE 83, 88, 95) in whole or in part, it will provide the parties with notice and opportunity to make arguments for or against continued sealing.

### III. Analysis

Defendants argue that the release, coupled with the operation of common-law indemnity, entitles them to summary judgment on Plaintiffs' claims against them. Defendants argue that this case is one of circular indemnity: because Plaintiffs have agreed to indemnify Buffalo Wild Wings, and because Defendants enjoy common-law indemnity from Buffalo Wild Wings, as a matter of law, there can be no ultimate recovery from Defendants by Plaintiffs. Essentially, Defendants wish to shift any and all responsibility for Sean Hengel's injuries to the first place he drank that night. There is no dispute about the contractual right to indemnification granted to Buffalo Wild Wings through the release. This case, however, is not an appropriate one for the application of common-law indemnity.

Indemnity "is simply the repayment to one party by another party who caused the loss, of such amounts the first party was compelled to pay." *Liberty Mut. Ins. Co. v. Louisville & Nashville R.R. Co.,* 455 S.W.2d 537, 541 (Ky. 1970). Unlike statutory-based apportionment or contribution, the right to indemnity arises from the common law and "is available to one exposed to liability because of the wrongful act of another with whom he/she is not *in pari delicto.*" *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780 (Ky. 2000). Kentucky courts use the Latin phrase "*in pari delicto*" to mean "in equal fault." *Stanford v. U.S.*, No. 12-cv-93-ART, 2013 WL 2422790, at *12 (E.D. Ky. May 31, 2013) (citations omitted). Under Kentucky law, cases permitting recovery based on indemnity principles "are exceptions to the general rule, and are based on principles of equity." *Hall*, 2007 WL 1385943, at *3 (internal quotation marks and citations omitted).

This common-law indemnity exists only in two types of cases. First, there are the cases in which the party seeking indemnity claims to be only constructively or technically liable.

*Degener*, 27 S.W.3d at 780.  These cases include an employer being held responsible for the acts of an employee.  Second, there are the cases in which "both parties have been in fault, but not in the same fault, towards the party injured, and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury."  *Id.*  "Thus, under Kentucky law, the nature of the negligence of the parties remains relevant, because if the only negligence attributable a party is passive, secondary, or technical, the parties cannot be said to be in pari delicto and an indemnity claim may therefore be appropriate."  *Wayne Cnty. Hosp., Inc. v. Jakobson*, No. 09-44-GFVT, 2013 WL 1870428, at *11 (E.D. Ky. May 3, 2013).  Often, the *in pari delicto* determination is made by the Court as matter of law.  *Id.* (discussing Palmore Instructions to Juries § 46.05, which has an instruction illustrating "the unusual situation where a claim for indemnity will turn upon an issue of fact.").

This case does not fit into either category of common-law indemnity.  It is not a case of constructive liability, because there is no relationship between Bluegrass Tavern and Buffalo Wild Wings, or between Irish Holdings and Buffalo Wild Wings.  Nor is this case of "passive, secondary, or technical" negligence.  In the Amended Complaint, Plaintiffs asserted claims against each establishment for dram shop liability under K.R.S. § 413.241, general negligence, negligence *per se* based on K.R.S. §§ 244.080, 244.085, 413.241, and 530.070, and wrongful death and personal injury under K.R.S. §§ 411.130 and 411.133.  (DE 42, Amended Complaint, ¶¶ 43-59).  Plaintiffs have alleged independent liability on the part of each Defendant, based on each Defendant's conduct.  The liability of each Defendant depends on proof that its employees were independently negligently in selling or serving intoxicating beverages to Sean Hengel.  *See Destock #14, Inc. v. Alvey*, 993 S.W.2d 952, 959 (Ky. 1999) (discussing the separate liability of a

4

restaurant under Kentucky's dram shop statute). In this case, the potential fault of the parties is exactly of the same type: failing to exercise the proper duty in serving intoxicating beverages.

This case does not present a fact pattern like that of the oft-cited Kentucky case on common-law indemnity, *Brown Hotel Co. v. Pittsburgh Fuel Co.*, 311 Ky. 396, 224 S.W.2d 165 (Ky. 1949). In *Brown Hotel*, a pedestrian was injured when an employee of the defendant fuel company failed to secure a manhole cover on the hotel's premises. The hotel was granted common-law indemnity because it was not *in pari delicto* with the fuel company in bringing about the pedestrian's injuries. Here, Defendants basically argue that they are in the same position as the hotel in *Brown Hotel* and not *in pari delicto* with Buffalo Wild Wings for Sean Hengel's injuries caused by any negligence in serving alcohol. Defendants' role, however, is not like that of the hotel in *Brown Hotel*. In that case, the court found that the hotel was not "acting jointly or concurrently or contributorily in committing the tort" suffered by the plaintiff. *Brown Hotel*, 311 Ky. at 405, 224 S.W.2d 165. Unlike the hotel, Bluegrass Tavern and Irish Holdings had active roles, each serving drinks to Sean Hengel. Each Defendant possessed the same duty to every patron that entered, and each Defendant could breach that duty.[3]

As a result, common-law indemnity does not apply; this case does not present an exception the general rule. "Rather, the principles of comparative fault would serve to properly apportion liability among the parties." *ISP Chemicals LLC v. Dutchland, Inc.*, 771 F. Supp. 2d 747, 751 (W.D. Ky. 2011) (analyzing cases under Kentucky precedent and finding that apportionment is the proper way to address allegations of different *degrees* of fault). Instead, Kentucky precedent reveals that cases involving employer-employee relationships or premises liability typically present the facts that give rise to indemnity claims. *See Franke v. Ford Motor*

---

[3] Whether that duty was actually breached is the subject of another pair of summary judgment motions from Bluegrass Tavern (DE 87) and Irish Holdings (DE 85).

*Co.*, 398 F. Supp. 2d 833, 840 (W.D. Ky. 2005); *Johnson v. Uptown Cafe Co.*, No. 3:04-cv-80-H, 2005 U.S. Dist. LEXIS 7391, at *5 (W.D. Ky. Feb. 7, 2005). Because there is no agency or quasi-agency relationship between the parties, and because this is not a case involving merely technical or passive negligence, indemnity is not proper here. *See York v. Petzl Am., Inc.*, 353 S.W.3d 349, 354 (Ky. Ct. App. 2010).

### IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that the motions for summary judgment filed by Bluegrass Tavern, LLC (DE 83) and Irish Holdings, LLC (DE 88) are DENIED.

This 31st day of July, 2013.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge